IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 24, 2007

## STATE OF TENNESSEE v. WILLIAM EARL ROBINSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-C-1976    Cheryl Blackburn, Judge**

———————————

**No. M2007-00233-CCA-R3-CD - Filed November 15, 2007**

———————————

The defendant, William Earl Robinson, pled guilty to one count of rape, a Class B felony, and was sentenced to eight years in confinement. His sentence was suspended and he was placed on probation with credit for time served. The defendant was subsequently arrested for violation of probation. Following a hearing, his probation was revoked and he was remanded into custody for the remainder of his original sentence. The defendant appeals the revocation of his probation and argues that the trial court erred by placing his entire sentence into effect. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Joseph M. Tipton, P.J. and Robert W. Wedemeyer, J., joined.

Jeffrey A. DeVasher (on appeal) and J. Michael Engle (at hearing), Nashville, Tennessee, for the appellant, William Earl Robinson.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

The record reflects that the defendant was indicted and charged with one count of rape and one count of robbery. On September 11, 2006, the defendant entered a negotiated plea of guilty to the rape charge and received an eight-year suspended sentence. The defendant received credit for time served and was placed on probation for the balance of his sentence, six years and seven months. The robbery charge was dismissed as part of the plea agreement. The defendant was required to register as a sex offender and have no further contact with the victim.

On October 6, 2006, a probation violation warrant was issued against the defendant for failure to comply with the conditions of probation including: failing to complete the sex offender registry, failing to provide verification of employment, failing to provide a DNA sample, failing to report to his probation officer, failure to begin sex offender treatment, failing to provide a verifiable address, failing to pay probation fees, and failing to complete a polygraph test. A hearing on the warrant was held on November 17, 2006, and was continued on December 8, 2006. At the conclusion of the continued probation revocation hearing, the trial court ordered that the defendant's probation be revoked and the remainder of his suspended sentence be placed into effect.

Probation Officer Terrance Bohannon testified at the probation revocation hearing. He stated that a convicted sexual offender is required to register within seventy-two hours of release. Officer Bohannon testified that the defendant had not registered as directed. The first contact he had with the defendant was on October 4, 2006, when the defendant called him and said he was unable to get Officer Bohannon's number and needed to know where to go. Officer Bohannon instructed the defendant to come to his office the next day at 8:00 a.m. Officer Bohannon also stated that when he spoke to the defendant on October 4th, he had already written out the probation revocation warrant, but he "just wanted to see who [he] was writing on and talk to [him in] person."

Officer Bohannon testified that the next morning, October 5th, the defendant called him at 8:15 a.m. and told him he was down the street. Officer Bohannon gave him directions to the office. According to Officer Bohannon, the defendant arrived at his office at 8:38 a.m. He asked the defendant what time he arrived, to which the defendant responded, "8:00 o'clock." Officer Bohannon asked the defendant why he lied to him and then told him to leave the office and return the next week.

Officer Bohannon testified that he received a call from the defendant later that day and discussed some of the conditions of probation with him. Officer Bohannon told the defendant he would have to inform his employer that he was a sex offender. According to Officer Bohannon, the defendant said he was scared that if he told his employer, any trust his employer had in him would be destroyed and he would lose his job. Officer Bohannon warned the defendant that he was violating a "direct and lawful" instruction from a probation officer, which he acknowledged. Officer Bohannon also stated that the defendant failed to provide a DNA sample, had not gone to sex offender treatment, and had not completed a polygraph – all requirements of his probation. Officer Bohannon recounted that he had the defendant arrested for violating the requirements of his probation when the defendant returned to his office one week later on October 11th.

On cross-examination, Officer Bohannon admitted that he actually had three or four contacts with the defendant, but he chose not to count the telephone calls as contacts. He also acknowledged that the revocation warrant stipulated that the defendant violated his probation for "failure to report to his [probation] officer since being released." Officer Bohannon stated that he did not count the first appointment where the defendant arrived "late" as a contact, or the later appointment where the defendant was arrested. Officer Bohannon also admitted that he had been contacted by defense

counsel regarding the defendant's reluctance to inform his employer before the defendant's arrest on October 11th. Officer Bohannon stated that it was his position that the defendant must inform his employer that he was a sex offender and the employer must acknowledge that fact in writing, otherwise the defendant must terminate his employment.

The defendant testified he was homeless and went to live at the Nashville Union Rescue Mission immediately after pleading guilty on September 11, 2006. He recounted that the same day, he was robbed. Among the stolen possessions were two laundry bags containing his clothing, personal possessions, and the information he received from the court regarding the requirements for probation and instructions for contacting his assigned probation officer.

The defendant testified that he called the trial judge's clerk in an attempt to determine whom he should contact. The clerk directed the defendant to contact Kim Bone, the court probation officer he met with after entering his plea in court. The court clerk did not have Officer Bone's number. He also contacted the probation office which did not have Officer Bone's number either. On September 19th or 20th, he obtained Officer Bone's number and left a message with her explaining his predicament. Officer Bone returned the defendant's call on September 27th and instructed him to call Officer Carolyn Smith. The defendant called Officer Smith whose voice message indicated she was involved in in-service training for the week. The defendant testified that he called Smith and left messages for her each day. On September 29th, Smith called the defendant back and instructed him to call Probation Officer Terrance Bohannon. The defendant testified that by the time Officer Smith returned his call, the prepaid cell phone he had been using as his contact number had exceeded its allotted minutes and he was unable to retrieve any messages. After the defendant received a paycheck from his job at a Krystal's restaurant on October 3rd, he bought more minutes for the phone and retrieved the message from Officer Smith directing him to contact Officer Bohannon. On October 4th, he telephoned Officer Bohannon who told him to report to his office at 8:00 a.m the following morning, October 5th.

The defendant testified that he took a bus the next day to meet with Officer Bohannon. The defendant recalled that the bus was delayed due to the boarding of an elderly passenger, and, as a result, he arrived two blocks from the office at 8:10 a.m. According to the defendant, Officer Bohannon told him that he was late, that he should go home, and that he should return to the probation office the next week. The defendant recounted that he called Officer Bohannon later the same day and was told that he would have to disclose to his employer that he was a convicted sex offender. The defendant informed Officer Bohannon that he told his employer that he had been convicted of a crime and was on probation, but he did not want to disclose the nature of his conviction, as it would compromise his employment.

The defendant testified that he gained successful employment upon his release. He stated that he worked at a Krystal's restaurant and as a warehouse manager for Hampshire House International, an antique business. He also stated that he was seeking employment at a vending company when he was arrested for the probation violation. The defendant testified that he had another job arranged with a tire company pending his release.

With regard to his failure to submit a DNA sample, the defendant testified that he had provided a DNA sample prior to entry of his guilty plea when the Tennessee Bureau of Investigation (TBI) laboratory obtained a DNA sample from him. He stated that it was his belief that he had already provided the required sample because he had seen a report to that effect prior to entering his guilty plea. On cross-examination, the defendant also testified that he did not receive any instruction about the requirement to register as a sex offender with the local sheriff's office.

At the conclusion of the November 17th hearing, the trial court delayed its decision until December 8th in order to review the transcript of the defendant's guilty plea hearing. The transcript of the guilty plea hearing indicates that the general rules of probation were explained to the defendant by the court. However, the defendant was directed by the court to talk with the court probation officer regarding specific probation requirements for sex offenders. The transcript also reflects that the defendant, after the first probation revocation hearing, made arrangements to register as a sex offender before the continued revocation hearing on December 8th. Thereafter, the trial court placed the defendant's sentence into effect, gave the defendant credit for jail time already served, and remanded the defendant into the custody of the Tennessee Department of Correction.

**ANALYSIS**

On appeal, the defendant challenges the revocation of his probation and argues that the trial court erred by placing his entire sentence into effect upon finding that he violated his probation.

The decision to revoke probation lies within the sound discretion of the trial court. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). The trial court may revoke probation upon a finding by a preponderance of the evidence that the defendant violated the conditions of his or her probation. *See* Tenn. Code Ann. §§ 40-35-310, -311(e)(2006); *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). The decision of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. *Harkins*, 811 S.W.2d at 82. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. *Harkins*, 811 S.W.2d at 82; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Upon a finding that a defendant has violated the conditions of probation, a trial court has the authority to cause execution of the defendant's original judgment as it was originally entered, Tenn. Code Ann. §§ 40-35-310,-311, or to extend the period of probation supervision for any period not in excess of two (2) years. Tenn. Code Ann. § 40-35-308(c); *Bowling*, 958 S.W.2d at 363. *See State v. Hunter*, 1 S.W.3d 643 (Tenn. 1999).

In the instant case the state presented proof that the defendant violated the terms of his probation. The defendant failed to complete the sex offender registry, failed to provide verification of employment or address, failed to supply a DNA sample to probation authorities and failed to report to his probation officer in a timely fashion. In addition, he did not begin sex offender treatment, pay probation fees, or complete a polygraph test as required. The trial court heard the

testimony of the witnesses, including the defendant, and made an assessment of his credibility. *See State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

Upon review of the record, we would note that while the probation officer in this case properly issued a revocation warrant for the defendant based on his failure to comply with the conditions of his probation, the probation officer's initial response to the defendant's circumstances and initial contact seemed unduly rigid. The defendant committed numerous technical violations and encountered several uncontrollable circumstances, which, when coupled with the actions of the probation officer, appeared to hamper his efforts to comply with his probation. In our view, the probation officer had a minimal obligation to meet with the defendant and discuss the circumstances surrounding the defendant's probation violations prior to executing the revocation warrant.

Even though the balance of the defendant's probation violations stemmed from the initial theft of his property after his release, an unfortunate circumstance, we conclude that the trial court did not commit an abuse of discretion by revoking the defendant's probation and imposing confinement for the remainder of the defendant's sentence. The trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." Tenn. Code Ann. § 40-35-311(e). The defendant is without relief on this issue.

## CONCLUSION

Based upon the foregoing reasoning and authority, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE